ELIZABETH A. STRANGE
Acting United States Attorney
District of Arizona

Alexander W. Samuels
Arizona State Bar No. 028926
Dimitra H. Sampson
Arizona State Bar No. 019133
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1200
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Alexander.Samuels@usdoj.gov
Email: Dimitra.Sampson@usdoj.gov
Attorneys for Plaintiff

FILED _____ LODGED
_____ RECEIVED _____ COPY

APR - 4 2017

CLERK US DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

_____ FILED _____ LODGED
RECEIVED _____ COPY

AUG - 8 2017

CLERK US DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>vs.<br><br>Camille Lomaomvaya,<br><br>Defendant. | No. CR-17-08070-PCT-DLR<br><br>**PLEA AGREEMENT** |

Plaintiff, United States of America, and the defendant, CAMILLE LOMAOMVAYA, hereby agree to dispose of this matter on the following terms and conditions:

## 1.    PLEA

The defendant will plead guilty to an Information charging the defendant with a violation of 18 United States Code (U.S.C.) §§ 2119(3) and 2, Carjacking Resulting in Death (Aiding and Abetting), a Class A felony offense.

cc: DUSM AFPD\PROB

## 2. **MAXIMUM PENALTIES**

a.    A violation of 18 U.S.C. §§ 2119(3) and 2, is punishable by a maximum fine of $250,000.00, a maximum term of imprisonment of life, or both, and a term of supervised release of 5 years. If the violation of 18 U.S.C. § 2119(3) had been committed by someone who was an adult at the time of the offense, it could have been punishable by death.

b.    According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court shall order the defendant to:

(1)    make restitution to any victim of the offense pursuant to 18 U.S.C. § 3663 and/or 3663A, unless the Court determines that restitution would not be appropriate;

(2)    pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine is not appropriate;

(3)    serve a term of supervised release when required by statute or when a sentence of imprisonment of more than one year is imposed (with the understanding that the Court may impose a term of supervised release in all other cases); and

(4)    pay upon conviction a $100 special assessment for each count to which the defendant pleads guilty pursuant to 18 U.S.C. § 3013.

c.    The Court is required to consider the Sentencing Guidelines in determining the defendant's sentence. However, the Sentencing Guidelines are advisory, and the Court is free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime(s) of conviction, unless there are stipulations to the contrary that the Court accepts.

## 3. **AGREEMENTS REGARDING SENTENCING**

a.    <u>Stipulation</u>. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant stipulate that the defendant shall agree to be proceeded against as an adult. Accordingly, pursuant to 18 U.S.C. § 5032, the defendant shall file with the Court, in writing and upon advice of counsel, a request to be proceeded against as an adult. If this plea agreement is rejected by the Court, the defendant shall have the right to withdraw her

request to be proceeded against as an adult.

b. <u>Stipulation</u>. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant stipulate that the defendant shall be sentenced to no less than 12 years' imprisonment and no more than 20 years' imprisonment.

c. <u>Restitution</u>. Pursuant to 18 U.S.C. § 3663, 3663A and/or 2248, the defendant specifically agrees to pay full restitution to all victims in an amount to be determined by the court, but in no event more than $100,000.00 per victim. "Victims" include persons or entities directly or proximately harmed by defendant's "relevant conduct" including conduct pertaining to any dismissed counts or uncharged conduct, as defined by U.S.S.G. §1B1.3, regardless of whether such conduct constitutes an "offense" under 18 U.S.C. §§ 2259, 3663, 3663(A) or 2248. Pursuant to 18 U.S.C. §§ 3663 and 3664(j)(1), "victims" also include persons or entities (whether private or government: state, federal or tribal) that have paid or costs related to defendant's conduct, including insurance providers and health care providers (including those such as Medicaid, Medicare and AHCCCS). Even if the victim did not suffer physical injury, the defendant expressly agrees to pay restitution for expenditures and future expenses related to treatment for mental or emotional trauma suffered by the victims. Such expenditures shall include, but are not limited to: mental health treatment and counseling, in-patient treatment, and traditional Native American ceremonies treatment. The defendant understands that such restitution will be included in the Court's Order of Judgment and that an unanticipated restitution amount will not serve as grounds to withdraw the defendant's guilty plea or to withdraw from this plea agreement.

d. <u>Assets and Financial Responsibility</u>. The defendant shall make a full accounting of all assets in which the defendant has any legal or equitable interest. The defendant shall not (and shall not aid or abet any other party to) sell, hide, waste, spend, or transfer any such assets or property before sentencing, without the prior approval of the United States (provided, however, that no prior approval will be required for routine, day-to-day expenditures). The defendant also expressly authorizes the United States Attorney's Office to immediately obtain a credit report as to the defendant in order to evaluate the

- 3 -

defendant's ability to satisfy any financial obligation imposed by the Court. The defendant also shall make full disclosure of all current and projected assets to the U.S. Probation Office immediately and prior to the termination of the defendant's supervised release or probation, such disclosures to be shared with the U.S. Attorney's Office, including the Financial Litigation Unit, for any purpose. Finally, the defendant shall participate in the Inmate Financial Responsibility Program to fulfill all financial obligations due and owing under this agreement and the law.

If the defendant is a member of a Native American tribe that provides "per capita" payments to its members, the defendant agrees that any such "per capita" payment shall be paid over to the Clerk of the Court and applied to the defendant's restitution obligation until restitution to all victims is paid in full.

e. <u>Acceptance of Responsibility</u>. If the defendant makes full and complete disclosure to the U.S. Probation Office of the circumstances surrounding the defendant's commission of the offense, and if the defendant demonstrates an acceptance of responsibility for this offense up to and including the time of sentencing, the United States will recommend a two-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G.§ 3E1.1(a). If the defendant has an offense level of 16 or more, the United States will recommend an additional one-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(b).

f. <u>Non-Binding Recommendations</u>. The defendant understands that recommendations are not binding on the Court. The defendant further understands that the defendant will not be permitted to withdraw the guilty plea if the Court does not follow a recommendation.

**4. AGREEMENT TO DISMISS OR NOT TO PROSECUTE**

a. Pursuant to Fed. R. Crim. P. 11(c)(1)(A), the United States, at the time of sentencing, shall dismiss all other charges previously filed in this case and pending against the defendant.

b.    This agreement does not, in any manner, restrict the actions of the United States in any other district or bind any other United States Attorney's Office.

**5.    COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION**

a.    If the Court, after reviewing this plea agreement, concludes that any provision contained herein is inappropriate, it may reject the plea agreement and give the defendant the opportunity to withdraw the guilty plea in accordance with Fed. R. Crim. P. 11(c)(5).

b.    If the defendant's guilty plea or plea agreement is rejected, withdrawn, vacated, or reversed at any time, this agreement shall be null and void, the United States shall be free to prosecute the defendant for all crimes of which it then has knowledge and any charges that have been dismissed because of this plea agreement shall automatically be reinstated. In such event, the defendant waives any and all objections, motions, and defenses based upon the Statute of Limitations, the Speedy Trial Act, or constitutional restrictions in bringing later charges or proceedings. The defendant understands that any statements made at the time of the defendant's change of plea or sentencing may be used against the defendant in any subsequent hearing, trial, or proceeding subject to the limitations of Fed. R. Evid. 410.

**6.    WAIVER OF DEFENSES AND APPEAL RIGHTS**

The defendant waives (1) any and all motions, defenses, probable cause determinations, and objections that the defendant could assert to the indictment or information; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, an order of restitution or forfeiture, the entry of judgment against the defendant, or any aspect of the defendant's sentence, including the manner in which the sentence is determined, including but not limited to any appeals under 18 U.S.C. § 3742 (sentencing appeals) and motions under 28 U.S.C. §§ 2241 and 2255 (habeas petitions), and any right to file a motion for modification of sentence, including under 18 U.S.C. § 3582(c). This waiver shall result in the dismissal of any appeal, collateral attack, or other motion the defendant might file challenging the conviction, order

of restitution or forfeiture, or sentence in this case. This waiver shall not be construed to bar an otherwise-preserved claim of ineffective assistance of counsel or of "prosecutorial misconduct" (as that term is defined by Section II.B of Ariz. Ethics Op. 15-01 (2015)).

## 7. **DISCLOSURE OF INFORMATION**

a.   The United States retains the unrestricted right to provide information and make any and all statements it deems appropriate to the U.S. Probation Office and to the Court in connection with the case.

b.   Any information, statements, documents, and evidence that the defendant provides to the United States pursuant to this agreement may be used against the defendant at any time.

c.   The defendant shall cooperate fully with the U.S. Probation Office. Such cooperation shall include providing complete and truthful responses to questions posed by the U.S. Probation Office including, but not limited to, questions relating to:

(1)   criminal convictions, history of drug abuse, and mental illness; and

(2)   financial information, including present financial assets or liabilities that relate to the ability of the defendant to pay a fine or restitution.

## 8. **FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS**

a.   Nothing in this agreement shall be construed to protect the defendant from administrative or civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture. Pursuant to 18 U.S.C. § 3613, all monetary penalties, including restitution imposed by the Court, shall be due immediately upon judgment, shall be subject to immediate enforcement by the United States, and shall be submitted to the Treasury Offset Program so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts (which offset will not affect the periodic payment schedule). If the Court imposes a schedule of payments, the schedule of payments shall be merely a schedule of minimum payments and shall not be a limitation on the methods available to the United States to enforce the judgment.

**9.    ELEMENTS**

**Carjacking Resulting in Death**

On or about May 27, 2016, in the District of Arizona:

1.    The defendant took a motor vehicle from the person or presence of another by force and violence or by intimidation;

2.    The defendant acted with the intent to cause death or serious bodily harm;

3.    The motor vehicle previously had been transported, shipped, or received in interstate or foreign commerce; and

4.    The death of an individual resulted.

**Aiding and Abetting**

On or about May 27, 2016, in the District of Arizona:

1.    The crime of carjacking resulting in death was committed by someone;

2.    The defendant aided, counseled, commanded, induced, or procured that person with respect to at least one element of carjacking;

3.    The defendant acted with the intent to facilitate carjacking; and

4.    The defendant acted before the crime was completed.

**10.    FACTUAL BASIS**

a.    The defendant admits that the following facts are true and that if this matter were to proceed to trial the United States could prove the following facts beyond a reasonable doubt:

On May 27, 2016, LOMAOMVAYA, JANE DOE, and JOHN DOE went to F.T.'s home in the early afternoon. F.T.'s home is in the Second Mesa area of the Hopi Indian Reservation, in the District of Arizona. LOMAOMVAYA, JANE DOE, and JOHN DOE went to F.T.'s home with the intent of stealing her vehicle. They entered the home and LOMAOMVAYA physically restrained F.T. Using a knife provided by

LOMAOMVAYA, JANE DOE then stabbed F.T. multiple times. During the attack, JOHN DOE also physically restrained F.T. and covered her mouth to suppress her shouts for help. F.T. was successfully restrained throughout the attack. F.T. died as a result of the attack. LOMAOMVAYA, JANE DOE, and JOHN DOE also stole numerous items from F.T. that day during the attack, including her vehicle, a 2014 Dodge Avenger.

The 2014 Dodge Avenger had previously been transported in interstate commerce from California to Arizona.

Beginning in March of 2016 or earlier, LOMAOMVAYA and JANE DOE began planning the crimes that they executed on May 27. From March of 2016 to May 27, 2016, LOMAOMVAYA and JANE DOE exchanged Facebook messages in which they planned to steal F.T.'s vehicle. LOMAOMVAYA and JANE DOE also exchanged Facebook messages in which they discussed the possibility of killing F.T.

One such conversation in which the two planned to steal F.T.'s vehicle occurred on May 24, 2016. During the conversation, it was contemplated that JANE DOE would commit the crime on her own on May 24. LOMAOMVAYA instructed JANE DOE how to commit the crimes, including by saying: "Just go to that door. Open it and grab her around the head with whatever weapon you got. Tell her wassup and drop her off like in the back of the towers." Fifteen seconds later, LOMAOMVAYA instructed JANE DOE to delete the message; she likewise instructed JANE DOE to delete incriminating messages on other occasions during conversations relating to these crimes.

During the May 24 conversation, LOMAOMVAYA instructed JANE DOE to "get a glock if you can" and to use a knife if unable to obtain a "glock." LOMAOMVAYA then sent JANE DOE a picture of her knife, which is the knife used to kill F.T. on May 27. Later on May 24, JANE DOE messaged LOMAOMVAYA to say that she "couldn't do it" and "walked away." JANE DOE went on to say: "You gotta kill man cause you done it but I still gotchu. please." LOMAOMVAYA responded, "OK. its alright home girl. Knew you needed help a bit."

On May 26, 2016, LOMAOMVAYA recruited JOHN DOE to participate in the crimes that occurred on May 27.

After the crimes occurred at F.T.'s home on May 27, 2016, LOMAOMVAYA and JOHN DOE left the residence in F.T.'s vehicle, which they had stolen. JANE DOE left the residence on foot and eventually

returned home, where she hid the knife used to kill F.T. under her bed.

During the above-referenced attack, F.T. was stabbed 31 times and died as a result of the stab wounds.

## APPROVAL AND ACCEPTANCE OF THE DEFENDANT

I have read the entire plea agreement with the assistance of my attorney. I understand each of its provisions and I voluntarily agree to it.

I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I shall waive my rights to plead not guilty, to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence in my defense, to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination, all with the assistance of counsel, and to be presumed innocent until proven guilty beyond a reasonable doubt.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charges to which I am entering my guilty plea. I have further been advised by my attorney of the nature and range of the possible sentence and that my ultimate sentence shall be determined by the Court after consideration of the advisory Sentencing Guidelines.

I understand that I am entitled to contest my transfer to adult status in this case. I understand that I have the right to request a hearing pursuant to 18 U.S.C. § 5032, at which a district judge would determine whether I should be proceeded against as an adult. In exchange for the benefits I have received in this plea agreement, I knowingly and voluntarily waive any such right to a transfer hearing. I further knowingly and voluntarily agree to be proceeded against as an adult.

My guilty plea is not the result of force, threats, assurances, or promises, other than the promises contained in this agreement. I voluntarily agree to the provisions of this agreement and I agree to be bound according to its provisions.

1      I understand that if I am granted probation or placed on supervised release by the
2  Court, the terms and conditions of such probation/supervised release are subject to
3  modification at any time. I further understand that if I violate any of the conditions of my
4  probation/supervised release, my probation/supervised release may be revoked and upon
5  such revocation, notwithstanding any other provision of this agreement, I may be required
6  to serve a term of imprisonment or my sentence otherwise may be altered.

7      This written plea agreement, and any written addenda filed as attachments to this
8  plea agreement, contain all the terms and conditions of the plea. Any additional
9  agreements, if any such agreements exist, shall be recorded in a separate document and
10  may be filed with the Court under seal; accordingly, additional agreements, if any, may not
11  be in the public record.

12      I further agree that promises, including any predictions as to the Sentencing
13  Guideline range or to any Sentencing Guideline factors that will apply, made by anyone
14  (including my attorney) that are not contained within this written plea agreement, are null
15  and void and have no force and effect.

16      I am satisfied that my defense attorney has represented me in a competent manner.

17      I fully understand the terms and conditions of this plea agreement. I am not now
18  using or under the influence of any drug, medication, liquor, or other intoxicant or
19  depressant that would impair my ability to fully understand the terms and conditions of this
20  plea agreement.

21  _April 4, 2017_
22  Date                       CAMILLE LOMAOMVAYA
                                Defendant
23
24                    **APPROVAL OF DEFENSE COUNSEL**

25      I have discussed this case and the plea agreement with my client in detail and have
26  advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the
27  constitutional and other rights of an accused, the factual basis for and the nature of the
28  offense to which the guilty plea will be entered, possible defenses, and the consequences

- 10 -

of the guilty plea including the maximum statutory sentence possible. I have further discussed the concept of the advisory Sentencing Guidelines with the defendant. No assurances, promises, or representations have been given to me or to the defendant by the United States or any of its representatives that are not contained in this written agreement. I concur in the entry of the plea as indicated above and that the terms and conditions set forth in this agreement are in the best interests of my client. I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.

April 4, 2017
_____
Date

_____
MILAGROS CISNEROS
Attorney for Defendant

## APPROVAL OF THE UNITED STATES

I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth herein are appropriate and are in the best interests of justice.

ELIZABETH A. STRANGE
Acting United States Attorney
District of Arizona

4/4/17
_____
Date

_____
ALEXANDER W. SAMUELS
DIMITRA H. SAMPSON
Assistant U.S. Attorneys

## ACCEPTANCE BY THE COURT

8-7-17
_____
Date

_____
HONORABLE DOUGLAS L. RAYES
United States District Judge